# IN THE UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF OHIO

| | |
|---|---|
| APPLIED PROCESS EQUIPMENT, INC.<br>9332 N. 95th Way, Suite 8106<br>Scottsdale, Arizona 85258<br><br>Plaintiff,<br><br>V.<br><br>AQUEOUS VETS, LLC<br>16761 Clear Creek Road<br>Redding, CA 96001<br><br>Defendant. | CASE NO.<br><br>JUDGE<br><br>**COMPLAINT – BREACH OF CONTRACT; MONEY DUE** |

Plaintiff, Applied Process Equipment, Inc. (hereinafter "Applied"), for its Complaint against Defendant, Aqueous Vets, LLC (hereinafter "Aqueous"), states as follows:

## PARTIES

1. Applied, an Arizona corporation, is a wholly owned subsidiary of Enpress, L.L.C.; and Enpress L.L.C. is an Ohio limited liability company having its principal place of business located in Lake County, Ohio.

2. Aqueous is a California limited liability company, with its principal office located in Redding, California.

## JURISDICTION AND VENUE

3. This Court has subject matter jurisdiction over this proceeding as the parties are citizens of different states, and Applied's damages are greater than $75,000.

4. This action is properly brought in this Court as Aqueous has, pursuant to the terms of a Distributor Agreement entered into by and between the parties, consented to jurisdiction.

"exclusively in the state or federal courts located in or having jurisdiction in or over Lake County, Ohio." (See paragraph 18 of the *Distributor Agreement*, a true and accurate copy of which is attached hereto as Exhibit A").

## FACTS

5. Applied specializes in the design and manufacture of innovative water treatment solutions for small water systems, rural water utilities, and commercial and industrial water users, addressing arsenic and other inorganic heavy metals.

6. More specifically, Applied has designed, manufactured, and sells a water treatment cartridge system product (the "Applied Cartridge System" or "ACS") that is engineered and designed to remove arsenic, iron, manganese, and per- and polyfluoroalkyl substances (PFAS) from potable water.

7. According to the EPA[1], "PFAS are widely used, long-lasting chemicals, components of which break down very slowly over time. Because of their widespread use and their persistence in the environment, many PFAS are found in the blood of people and animals all over the world and are present at low levels in a variety of food products and in the environment."

8. The development of the Applied Cartridge System has allowed Applied to become a nationwide leader in the sale and distribution of products that remove dangerous levels of arsenic, iron, manganese and PFAS from drinking water.

9. On September 3, 2023, Applied and Aqueous entered into a Distributor Agreement, whereby Applied appointed Aqueous as the exclusive authorized private label distributor of Applied's "ACS Products" within North America. (Exhibit "A", at ¶1).

---

[1] https://www.epa.gov/pfas/pfas-explained

10. The term of the Distributor Agreement is three (3) years, beginning on September 3, 2023. (Exhibit "A", at ¶14).

11. The Distributor Agreement defines ACS Products as "[t]he private labeled [Applied] ACS product line, with cartridge-based filtration products (and loose-filled medias) that are on the ACS price sheet for contaminant removal, including (but not limited to) filtration of ARSENIC, IRON, MANGANESE and PFAS Chemicals, and new filtration products or contaminant removal filtration solutions as they become available through the ACS product line, for flow rates and systems from 25 gallons per minute up to and including 400 gallons per minute." (Exhibit "A", at Schedule B).

12. The Distributor Agreement required Applied to "label all ACS Products with Aqueous [ ] name, marks and logos, as may be specified by Aqueous Vets." (Exhibit "A", at ¶4).

13. The Distributor Agreement provides that Applied would, after privately labeling the ACS Products, supply such products to Aqueous for sale and use in the water treatment market with flow rates up to and including 400 gallons per minute, to the exclusion of the sale of such ACS Products to other customers and potential customers. (Exhibit "A", at ¶2.B).

14. The Distributor Agreement provides that Applied could not privately label any of its products (including the ACS products) for the application of arsenic and PFAS removal for sale to any third party, customer, distributor or sales representative – Applied could only sell privately labeled products to Aqueous. (Exhibit "A", at ¶2.A).

15. In exchange for this exclusive private label program or arrangement, Aqueous agreed that it would buy all of its requirements of ACS Products exclusively from Applied, to the exclusion of any other product offered by any other supplier that is substantially similar to the ACS Product or which removes or filters arsenic, PFAS and other contaminates in the water treatment

systems in the water treatment market with flow rates up to and including 400 gallons per minute flow rates. (Exhibit "A", at ¶2.B).

16. In exchange for the exclusive private label rights stated above, Aqueous further agreed that it not sell or distribute products anywhere in North America that were "similar to or competitive with the ACS Products under this Agreement in service flow rates up to and including 400 gallons per minute." (Exhibit "A", at ¶3.F).

17. Upon information and belief, Aqueous has breached the Distributor Agreement by marketing, selling, or offering to sell, water treatment system products with flow rates up to and including 400 gallons per minute that are similar to and competitive with the ACS Products manufactured by Applied.

## COUNT I - BREACH OF CONTRACT

18. Applied incorporates paragraphs 1 through 17 of the Complaint as if fully rewritten.

19. The Distributor Agreement is a lawful contract.

20. Applied has performed and fulfilled all of its obligations under the Distributor Agreement.

21. Aqueous has breached the Distributor Agreement by marketing, selling, or offering to sell, water treatment system products with flow rates up to and including 400 gallons per minute that are similar to and competitive with the ACS Products manufactured by Applied.

22. As a direct and proximate result of Aqueous' breach of the Distributor Agreement, Applied has suffered damages in an amount in excess of $1,000,000, as will be proven at trial.

## COUNT II – MONEY DUE

23. Applied incorporates paragraphs 1 through 22 of the Complaint as if fully rewritten.

24. Applied has, pursuant to purchase orders submitted by Aqueous, sold and delivered to Aqueous, certain cartridge filters.

25. Upon such sale, and pursuant to the terms of the Distributor Agreement, Applied issued invoices to Aqueous for the cartridge filters so delivered. (See Invoice, attached as Exhibits "B").

26. Aqueous has failed or refused to pay Applied for the cartridge filters sold and delivered to it by Applied.

27. For the invoices issued by Applied, there is now due and owing from Aqueous the sum of $99,041.09, together with interest at the statutory rate from January 26, 2024.

28. As a result of the failure of Aqueous to pay for the product ordered and purchased, Applied has suffered damages in the amount of $99,041.09, plus interest, or such other amount as may be proven at trial.

WHEREFORE, Applied demands judgment and relief against Aqueous as follows:

1. For the Breach of the Distributor Agreement, compensatory damages, in excess of $75,000, in an amount to be proven at trial;

2. For the sale and delivery of the privately labeled ACS Products to Aqueous, for which Aqueous has failed or refused to pay, the sum of $91,041.09, plus interest.

3. Additional damages and other relief, at law or equity, to which Applied is entitled;

4. Costs incurred in prosecuting this action; and

5. Any other appropriate relief that this Court deems just and equitable.

Respectfully submitted,

_____
Christopher J. Freeman
(Ohio Bar No. 0055983)
PO Box 4396
Copley, Ohio 44321
330-618-3307
chris@chrisfreemanlaw.com

Attorney for Plaintiff